IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| VERA MAE JACKSON, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | Civil Action No. 13-00006-B |
| | * | |
| CAROLYN W. COLVIN,[1] | * | |
| Commissioner of Social Security, | * | |
| | * | |
| Defendant. | * | |

## ORDER

Plaintiff, Vera Mae Jackson (hereinafter "Plaintiff"), brings this action seeking judicial review of a final decision of the Commissioner of Social Security denying her claim for a period of disability, disability insurance benefits, and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*, and 1381, *et seq*. On October 9, 2013, the parties consented to have the undersigned conduct any and all proceedings in this case. (Doc. 19). Thus, the action was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. The parties waived oral argument in this case. (Doc. 20). Upon careful consideration of the administrative record and the memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner be **AFFIRMED**.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d), Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

I. **Procedural History**

Plaintiff filed applications for a period of disability, disability insurance benefits, and supplemental security income in January 2010. (Tr. 116). Plaintiff alleges that she has been disabled since August 31, 2009, due to pain in her back, legs, and hips, swelling and numbness in her hands and feet, muscle spasms, and high blood pressure. (Id. at 116, 143). Plaintiff's applications were denied initially on April 2, 2010, and she timely filed a Request for Hearing before an Administrative Law Judge ("ALJ"). (Id. at 26, 64). On May 5, 2011, Administrative Law Judge Marni N. McCaghren held an administrative hearing, which was attended by Plaintiff, her attorney, and a vocational expert ("VE"). (Id. at 44). On May 12, 2011, the ALJ issued an unfavorable decision finding that Plaintiff is not disabled. (Id. at 31). Plaintiff's request for review was denied by the Appeals Council ("AC") on November 19, 2012. (Id. at 1). Thus, the ALJ's decision dated May 12, 2011, became the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff timely filed the present civil action. (Doc. 1). The parties agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

II. **Issue on Appeal**

    A.    Whether substantial evidence supports the ALJ's RFC assessment?

III. **Factual Background**

Plaintiff was born on March 16, 1958, and was fifty-three years of age at the time of her administrative hearing, which was conducted on May 5, 2011. (Tr. 44, 47). Plaintiff, who completed the eleventh grade, has worked in restaurant food preparation, housekeeping, and as a dietary aid. (Id. at 48, 50). According to Plaintiff, she last worked as a food preparer in a restaurant but stopped in 2010 because the restaurant went out of business. (Id. at 49-50).

Plaintiff testified that she is now precluded from performing any work because of "physical pains." (Id. at 51). Plaintiff testified that she cannot grip well and has pain in her right arm because of osteoarthritis, as well as swelling, numbness, and pain in her legs, feet, and hands. (Id. at 52-53). Plaintiff testified that she takes Tramadol and Napoxen for pain, which provide temporary relief, and she takes high blood pressure medication. (Id. at 52, 57).

With respect to her daily activities, Plaintiff testified that she shops, looks for jobs, rides the bus, cooks, does housework and laundry, and goes to church. (Id. at 53, 55). In her Function Report, Plaintiff further reported that she sweeps the front walk, goes to appointments, pays bills, goes to lunch, visits friends, and goes to the movies. (Id. at 156, 159). However, Plaintiff stated that she has to take four or five breaks during the day and rest for about thirty minutes to an hour. (Id. at 56).

A. **Standard of Review**

In reviewing claims brought under the Act, this Court's role is a limited one. The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct legal standards were applied.[2] Martin v. Sullivan, 894 F. 2d 1520, 1529 (11th Cir. 1990). A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Sewell v. Bowen, 792 F. 2d 1065, 1067 (11th Cir. 1986). The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. Brown v. Sullivan, 921 F. 2d 1233, 1235 (11th Cir. 1991); Bloodsworth v. Heckler, 703 F. 2d 1233, 1239 (11th Cir. 1983) (holding that substantial evidence is defined as "more than a scintilla, but less than a preponderance" and consists of

---

[2] This Court's review of the Commissioner's application of legal principles is plenary. Walker v. Bowen, 826 F. 2d 996, 999 (11th Cir. 1987).

"such relevant evidence as a reasonable person would accept as adequate to support a conclusion."). In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision. Chester v. Bowen, 792 F. 2d 129, 131 (11th Cir. 1986); Short v. Apfel, 1999 U.S. Dist. LEXIS 10163, *4 (S.D. Ala. June 14, 1999).

B.  **Discussion**

An individual who applies for Social Security disability benefits must prove his or her disability. 20 C.F.R. §§ 404.1512, 416.912. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); see also 20 C.F.R. §§ 404.1505(a), 416.905(a). The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven his or her disability.[3] 20 C.F.R. §§ 404.1520, 416.920.

---

[3] The claimant must first prove that he or she has not engaged in substantial gainful activity. The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work. Jones v. Bowen, 810 F. 2d 1001, 1005 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. Id. Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history. Sryock v. Heckler, 764 F. 2d 834, 836 (11th Cir. 1985). If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled. Jones v. Apfel, 190 F. 3d 1224, 1228 (11th Cir. 1999). See also Hale v. Bowen, 831 F. 2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

In the case *sub judice*, the ALJ determined that Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of August 31, 2009, and that she has the severe impairments of hypertension, arthralgia, pain and numbness of the upper and lower extremities, mild degenerative disc disease, left ganglia cyst, knee pain, and right hand, elbow, and shoulder pain. (Tr. at 33-34). The ALJ also found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments contained in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id. at 34).

The ALJ concluded that Plaintiff retained the residual functional capacity (hereinafter "RFC") to perform less than the full range of light work with the following limitations: she can lift and carry twenty pounds occasionally and ten pounds frequently; she can stand/walk a combined six hours and sit for two hours during an eight-hour workday with normal breaks; she should not push and pull with the right upper extremity on more than an occasional basis except as needed for reaching; she is only occasionally able to perform strength grasping with the right dominant hand in activities requiring a firm grip such as opening jars; she can never climb ladders, ropes, or scaffold, never crawl, and never perform overhead reaching with the right arm; she is unable to push and pull with the lower extremities; she can only occasionally crouch and should never kneel; she can only occasionally squat; she is unable to work at unprotected heights, work around dangerous machinery, or operate automotive equipment; and she would be off task or at a nonproductive pace for up to five percent of the workday. (Id. at 34-35).

The ALJ then determined that Plaintiff is unable to perform any past relevant work (hereinafter "PRW"). (Id. at 38). However, relying on the testimony of the VE, the ALJ concluded that, considering Plaintiff's RFC and vocational factors, such as age, education and work experience, Plaintiff is able to perform other jobs existing in significant numbers in the

national economy such as information clerk (DOT code 237.367-018, light, unskilled); garment folder (DOT code 789.687-066, light, unskilled); and garment bagger (DOT code 920.687-018, light, unskilled). (Id. at 40). The ALJ thus concluded that Plaintiff is not disabled. (Id.).

### 1. Medical Evidence[4]

The relevant medical evidence of record reflects that Plaintiff received treatment from January to March 2007 for cervical, lumbar, and hip sprain following a car accident. (Id. at 190, 193). Dr. Robert J. Zarzour noted that Plaintiff was experiencing "some decreased range of motion in her neck" and "mild" or "minimal" pain in the neck and hips. (Id. at 190-91). X-rays of Plaintiff's cervical and lumbar spine and pelvis showed "mild" degenerative changes and no fracture. (Id. at 193). Dr. Zarzour prescribed Naprosyn, Flexeril, and physical therapy. (Id. at 190, 193). Plaintiff completed fifteen sessions of physical therapy, and Dr. Zarzour released her to return only as needed, noting that he did not recommend any further testing or surgery. (Id. at 190, 212).

Two months later, in May 2007, Plaintiff was treated at the emergency room for right leg pain and chest pain. (Id. at 194). Plaintiff's physical examination was essentially normal, with the exception of "really minimal swelling" of her right leg with "no tenderness" and full range of motion of the ankle. (Id.). Plaintiff's EKG was normal, and the treating physician ruled out pulmonary embolism and deep vein thrombosis.[5] (Id. at 195). Plaintiff was prescribed Vicodin and advised to follow up with her primary care physician. (Id.).

On February 13, 2008, Plaintiff presented to Franklin Primary Health Center with

---

[4] As previously stated, Plaintiff's alleged onset date in this case is August 31, 2009. (Tr. 139).

[5] A CT scan of Plaintiff's chest was also normal, with the exception of a notation by the radiologist that there was "questionable prominence of interstitial markings which may be early changes of chronic small airways disease." (Tr. 196).

complaints of swelling and pain in her hands and left leg. (Id. at 241). Her physical examination was normal, and it was noted that there was no swelling in her hands or legs. (Id. at 241-42). She was prescribed Maxzide for high blood pressure. (Id.).

The following month, Plaintiff sought treatment from the Mobile Adult Care Center and reported numbness in her feet, swelling in her hands, chest pain, shortness of breath, and headache. (Id. at 215). Plaintiff's physical examination was normal, and she was diagnosed with reflux, for which she was prescribed Omeprazole. (Id.).

On August 29, 2008, Plaintiff was seen at USA Medical Center with complaints of chronic left leg pain. (Id. at 219). At that time, Plaintiff described her leg pain as a two out of ten on the pain scale. (Id.). Plaintiff reported that the pain increased when walking and was accompanied at times by numbness. (Id.). Plaintiff's physical examination showed no tenderness or swelling of the left leg. (Id. at 219-20). The treating physician prescribed Tramodol and instructed Plaintiff to follow up with her doctor as needed.[6] (Id. at 219, 221).

In February 2009, Plaintiff sought treatment at Franklin Primary Health Center and reported intermittent episodes of numbness and swelling in her hands and feet. (Id. at 239). Plaintiff described her pain level as five out of ten on that date. (Id.). Plaintiff's physical examination was essentially normal, and she was noted to be in no acute distress. (Id.). The treating physician diagnosed Plaintiff with paresthesias.[7] (Id. at 240). Plaintiff returned the following month with complaints of low back pain and bilateral hip pain. (Id. at 235, 238). Her

---

[6] Plaintiff was also treated at Franklin Primary Health Center for asthma in July and August 2008. (Tr. 243-46).

[7] Paresthesia refers to "a burning or prickling sensation that is usually felt in the hands, arms, legs, or feet, but can also occur in other parts of the body. The sensation, which happens without warning, is usually painless and described as tingling or numbness, skin crawling, or itching." See http://www.ninds.nih.gov/disorders/paresthesia/paresthesia.htm.

7

physical examination was normal, except for tenderness along her lumbar spine. (Id. at 237). Plaintiff had no swelling, no discoloration, and full range of motion. (Id.). The treating physician diagnosed Plaintiff with low back pain and hip pain and prescribed Ultram and x-rays. (Id. at 236, 238). Plaintiff was instructed to return in three months. (Id.).

In April 2009, Plaintiff returned to Franklin Primary Health Center with complaints that her high blood pressure medication was making her arms and legs "cramp." (Id. at 233). Plaintiff's physical examination was normal, and the treating physician prescribed a new blood pressure medication. (Id. at 234). At her follow up visit on May 14, 2009, Plaintiff reported no problems. (Id. at 231). Plaintiff returned on May 28, 2009, and reported nausea and abdominal pain. (Id. at 229). Plaintiff's physical examination was normal, with the exception of epigastric tenderness. (Id.). She was assessed with hypertension, nausea, dyspepsia, and peptic ulcer disease and prescribed medications. (Id. at 230).

On September 1, 2009, the day after Plaintiff's alleged onset date, Plaintiff sought treatment from Stanton Road Clinic for right shoulder and hand pain, "varicose vein" pain, and problems with her leg occasionally giving out. (Id. at 251). Plaintiff reported that she had not taken her hypertension medication for three months. (Id.). On physical examination, Plaintiff had a normal range of motion in her right shoulder, normal straight leg raise, and no swelling in her extremities. (Id. at 252). The treating physician prescribed blood pressure medication and Tylenol as needed for her shoulder pain. (Id.).

On March 8, 2010, the Agency referred Plaintiff to Dr. Michelle S. Jackson[8] for a consultative physical examination. (Id. at 255). Plaintiff reported that she had hypertension, back spasms, leg pain, and intermittent swelling in her hands and feet. (Id.). Plaintiff stated that

---

[8] Dr. Jackson specializes in internal medicine. (Tr. 259).

8

her hypertension was fairly well controlled and that she took Tylenol to help with back and leg pain. (Id.). Plaintiff reported that she quit work because she "ached all the time and [her] back and legs ached nightly." (Id.). Plaintiff did not limit how long or far she could walk, stand, or sit, except to say that she "hurts off and on." (Id.). Dr. Jackson noted that Plaintiff's activities included cleaning house, running routine errands, driving, and sometimes walking. (Id. at 256). Dr. Jackson further noted that x-rays taken of Plaintiff's neck and lumbar spine in 2007 showed degenerative changes but otherwise were normal. (Id. at 255).

Dr. Jackson's examination of Plaintiff was essentially normal. (Id. at 256-57). Plaintiff's gait, tandem walk, heel walk, and squat were normal. (Id. at 257). Her upper body strength, grips, and fine hand manipulations were normal. (Id.). Her lower body strength was normal with negative straight leg raises bilaterally. (Id.). Her paraspinal musculature and sensation were normal. (Id.). The range of motion in her C-spine was normal, as was her side-to-side bending. (Id.). She had no significant tenderness in her knees, ankles, or hips and no acute inflammation in her joints. (Id.). In addition, Plaintiff's cardiovascular, pulmonary, and neurological examinations were normal. (Id. at 256). Dr. Jackson assessed bilateral leg pain, low back pain, history of mild disc disease in neck and lumbar spine, and controlled hypertension. (Id. at 257). Dr. Jackson concluded: Plaintiff's "[e]xamination was essentially normal here in the office today. [Blood pressure] is well controlled. I do not see any evidence of disease, physical problems, or disability. . . . [H]er examination did not show anything significant. She does go about her daily activities without any problems, drives, cleans house, [and runs] routine errands."[9] (Id.).

---

[9] The following month, on April 4, 2010, State Agency physician, Dr. Gregory K. Parker, reviewed Plaintiff's medical records and determined that her hypertension, back pain, and swelling, numbness, and nerve problems in her hands and feet were not severe. (Tr. 258).

9

Ten days later, on March 18, 2010, Plaintiff presented to the Stanton Road Clinic and reported leg stiffness and pain that moved to her knee, calf, and ankle, as well as swelling after standing for several hours. (Id. at 269). Plaintiff's examination was normal, and she was instructed to take Tylenol as needed for leg pain and return in three months. (Id. at 270).

On April 12, 2010, Plaintiff was seen at the Stanton Road Clinic complaining of left leg cramps. (Id. at 267). Plaintiff reported that she was working in a restaurant and that the cramping was worse after being up on her feet for over eight hours, but she had not noticed any swelling. (Id.). Plaintiff's physical examination was essentially normal, with no evidence of deep vein thrombosis. (Id. at 268). The treating physician assessed that Plaintiff's leg cramping was the result of deconditioning and instructed Plaintiff to do exercises for strengthening. (Id.). Plaintiff returned two months later again complaining that her leg pain and numbness had not improved although she was taking Tylenol and Motrin for relief. (Id. at 265). She reported being off of her blood pressure medication and having occasional leg and arm swelling and shortness of breath. (Id.). Dr. Shyla Reddy's examination of Plaintiff was essentially normal. (Id. at 266). Dr. Reddy noted that Plaintiff's gross sensation was in tact bilaterally in her upper and lower extremities, with no focal neurological deficits. (Id.). Dr. Reddy concluded, "I cannot explain her neuro [complaints]." (Id.).

On October 18, 2010, Plaintiff sought treatment at Franklin Primary Health Center and reported shortness of breath, nausea, dizziness, and pain in both arms and legs. (Id. at 291). Plaintiff's examination was normal, with the exception of bilateral wrist tenderness. (Id.). Plaintiff was diagnosed with hypertension, arthralgia, dizziness, and nausea and for which she was prescribed medications and instructed to return in two weeks. (Id. at 292). Plaintiff returned four months later with complaints of pain in her right elbow and wrist and excessive indigestion.

(Id. at 288). Plaintiff also reported that she out of all of her medications. (Id. at 290). Her physical examination was normal, except that extension in her right elbow was limited. (Id. at 288). The treating physician assessed Plaintiff with lower quadrant pain, dyspepsia, right elbow pain, possible carpal tunnel syndrome, and hypertension. He prescribed medications including Naproxen and Tramadol for pain, and ordered an x-ray of Plaintiff's right elbow pain. (Id. at 289).

On May 1, 2011, Plaintiff returned to Franklin Primary Health Center for a follow up examination and reported her pain as a four out of ten on that date. She was prescribed Naproxen and Tramadol for pain. (Id. at 286). She was also instructed to go to the emergency room to rule out deep vein thrombosis. (Id.). This is the final treatment note in the record.

**2. Issues**

**a. Whether substantial evidence supports the ALJ's RFC assessment?**

Plaintiff asserts that the ALJ's RFC assessment that she can perform a reduced range of light work[10] is not supported by substantial evidence in this case and, further, that the ALJ erred in failing to develop a full and fair record by not ordering a second[11] consultative physical

---

[10] As discussed above, the ALJ found that Plaintiff retained the RFC to perform light work, with the following limitations: she can lift and carry twenty pounds occasionally and ten pounds frequently; she can stand/walk a combined six hours and sit for two hours during an eight-hour workday with normal breaks; she should not push and pull with the right upper extremity on more than an occasional basis except as needed for reaching; she is only occasionally able to perform strength grasping with the right dominant hand in activities requiring a firm grip such as opening jars; she can never climb ladders, ropes, or scaffold, never crawl, and never perform overhead reaching with the right arm; she is unable to push and pull with the lower extremities; she can only occasionally crouch and should never kneel; she can only occasionally squat; she is unable to work at unprotected heights, work around dangerous machinery, or operate automotive equipment; and she would be off task or at a nonproductive pace for up to five percent of the workday. (Tr. at 34-35).

[11] As discussed above, the Agency referred Plaintiff to Dr. Michelle Jackson on March 8, 2010, for a consultative physical examination. (Tr. 255). Although Dr. Jackson did not complete a

11

examination. (Doc. 13 at 7-8). According to Plaintiff, the ALJ was required to obtain an additional consultative physical examination because there is no "formal" physical RFC assessment from a treating or examining medical source in this case clarifying Plaintiff's abilities and limitations. (Id. at 8). The Commissioner counters that the ALJ's decision is supported by substantial medical evidence in the record even in the absence of a formal RFC assessment from a treating or examining medical source. (Doc. 17 at 11). The Court finds that Plaintiff's claim is without merit.

It is well established that a hearing before an ALJ in social security cases is inquisitorial and not adversarial. A claimant bears the burden of proving disability and of producing evidence in support of his claim, while the ALJ has "a basic duty to develop a full and fair record." Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam); see also Ingram v. Commissioner of Soc. Sec. Admin., 496 F.3d 1253, 1269 (11th Cir. 2007). This duty to develop the record exists whether or not the claimant is represented by counsel. Brown v. Shalala, 44 F.3d 931, 934 (11th Cir. 1995).

In fulfilling the duty to conduct a full and fair inquiry, the ALJ has the discretion to order a consultative examination where the record establishes that such is necessary to enable the ALJ to render a decision. Holladay v. Bowen, 848 F.2d 1206, 1210 (11th Cir. 1988). However, the ALJ is not required to order an additional consultative examination where the record contains sufficient evidence to permit the ALJ's RFC determination. Good v. Astrue, 240 Fed. Appx. 399, 404 (11th Cir. 2007) (unpublished) ("the ALJ need not order an additional consultative

---

formal RFC assessment, she prepared a three page report in which she stated that the results of Plaintiff's examination were "essentially normal," that the examination "did not show anything significant," and that the examination did not show "any evidence of disease, physical problems, or disability." (Id. at 257). While not a "formal" RFC assessment, Dr. Jackson's opinions provide support from an examining medical source for the ALJ's RFC determination that Plaintiff could perform a range of light work.

examination where the record was sufficient for a decision."); see also Ingram, 496 F.3d at 1269 ("The administrative law judge has a duty to develop the record where appropriate but is not required to order a consultative examination as long as the record contains sufficient evidence for the administrative law judge to make an informed decision."). Further, "there must be a showing of prejudice before [the court] will find that the claimant's right to due process has been violated to such a degree that the case must be remanded to the Secretary for further development of the record." Brown, 44 F.3d at 935. In evaluating the necessity for a remand, the Court is guided by "whether the record reveals evidentiary gaps which result in unfairness or 'clear prejudice.'" Id. (citations omitted).

Residual functional capacity is a measure of what Plaintiff can do despite his or her credible limitations. See 20 C.F.R. § 404.1545. The responsibility for determining a plaintiff's RFC lies with the ALJ and is based on all of the evidence of record. See Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004) (ALJ has duty to assess the residual functional capacity on the basis of all the relevant credible evidence of record); 20 C.F.R. §§ 404.1546, 416.946 (responsibility for determining a claimant's residual functional capacity lies with the ALJ). See also Foxx v. Astrue, 2009 U.S. Dist. LEXIS 80307, *17, 2009 WL 2899048, *6 (S.D. Ala. Sept. 3, 2009) ("The RFC assessment must be based on all of the relevant evidence in the case such as: medical history, medical signs and laboratory findings, the effects of treatment, reports of daily activities, lay evidence, recorded observations, and medical source statements.") (citing SSR 96-8p, 1996 SSR LEXIS 5). Once that decision is made, the claimant bears the burden of demonstrating that the ALJ's decision is not supported by substantial evidence. See Flynn v. Heckler, 768 F.2d 1273, 1274 (11th Cir. 1985). For the reasons that follow, Plaintiff has failed to meet that burden.

First, the Court rejects Plaintiff's contention that the ALJ's RFC assessment was not based on substantial evidence simply because the record was devoid of a formal RFC assessment by a treating or examining medical source. "[T]he Eleventh Circuit has not set out a rule indicating that an RFC must be based on the assessment of a treating or examining physician in every case." Saunders v. Astrue, 2012 U.S. Dist. LEXIS 39571, *10, 2012 WL 997222, *4 (M.D. Ala. March 23, 2012). "The ALJ's RFC assessment may be supported by substantial evidence, even in the absence of an opinion from an examining medical source about Plaintiff's functional capacity." Id. at n.5 (citing Green v. Soc. Sec. Admin., 223 Fed. Appx. 915, 923 (11th Cir. 2007) (unpublished)).

In Green, the Eleventh Circuit affirmed the district court's finding that the ALJ's RFC assessment was supported by substantial evidence where the ALJ properly rejected the treating physician's opinion and formulated the plaintiff's RFC based on treatment records, without a physical capacities evaluation by any physician. Id., 223 Fed. Appx. at 922-24. The court held, "[a]lthough a claimant may provide a statement containing a physician's opinion of her remaining capabilities, the ALJ will evaluate such a statement in light of the other evidence presented and the ultimate determination of disability is reserved for the ALJ." Id., 223 Fed. Appx. at 923 (citing 20 CFR §§ 404.1513, 404.1527, 404.1545); see also Packer v. Astrue, 2013 U.S. Dist. LEXIS 20580, *7, 2013 WL 593497, *2 (S.D. Ala. February 14, 2013) (the fact that no treating or examining medical source submitted a physical capacities evaluation "does not, in and of itself, mean that there is no medical evidence, much less no 'substantial evidence,' to support the ALJ's decision."). Thus, Plaintiff's contention that the absence of a formal RFC evaluation by a treating or examining medical source means that the ALJ's RFC assessment is not based on substantial evidence is simply incorrect.

Second, having reviewed the record in its entirety, the Court finds that the ALJ fulfilled her duty to develop a full and fair record. The record before the ALJ contained the medical records from the doctors who treated Plaintiff for her severe physical impairments, those being, hypertension, arthralgia, pain and numbness of the upper and lower extremities, mild degenerative disc disease, left ganglia cyst, knee pain, and right hand, elbow, and shoulder pain. In addition, as previously noted, the record before the ALJ contained the report of consultative examiner, Dr. Michelle S. Jackson. The record before the ALJ also contained Plaintiff's testimony at the administrative hearing. This evidence was sufficient to enable the ALJ to determine Plaintiff's RFC. Indeed, there is nothing in the record which indicates that Plaintiff's limitations exceed those in the RFC.

As discussed in detail above, while the medical evidence in this case shows that Plaintiff has hypertension, arthralgia, pain and numbness of the upper and lower extremities, mild degenerative disc disease, left ganglia cyst, knee pain, and right hand, elbow, and shoulder pain, it also shows that these conditions are not disabling. Plaintiff's medical records repeatedly reflect that she had essentially "normal" physical examinations following her complaints of pain, numbness, and swelling in her upper and lower extremities and pain in her back. (Tr. at 194-95, 215, 233, 237, 241-42, 252, 266, 268, 270, 291). Moreover, Plaintiff's treating physicians consistently noted that her pain and swelling were mild or minimal and that her pain was relieved with over-the-counter or prescription pain medication (without any indication of negative side effects). None of Plaintiff's treating physicians recommended epidurals or surgery. (Id. at 190-94, 221, 237, 252, 268, 270, 286, 289). In addition, x-rays taken of Plaintiff's neck, lumbar spine, and pelvis in 2007 showed mild degenerative changes but otherwise were normal. (Id. at 193, 255).

In addition, consultative examiner Dr. Michelle Jackson specifically evaluated Plaintiff's gait, tandem walk, heel walk, squat, upper body strength, grips, fine hand manipulations, lower body strength, paraspinal musculature and sensation, range of motion in her C-spine, and side-to-side bending and found them all to be "normal." (Id. at 256-57). In addition, Dr. Jackson noted that Plaintiff had no significant tenderness in her knees, ankles, or hips, that she had no acute inflammation in her joints, and that her cardiovascular, pulmonary, and neurological examinations were normal. (Id.). Also, Plaintiff reported to that Dr. Jackson that her hypertension was fairly well controlled, that she took Tylenol to help with back and leg pain, and that her daily activities included cleaning the house, running routine errands, driving, and sometimes walking. (Id. at 255-56). Dr. Jackson noted that Plaintiff did not limit how long or far she could walk, stand, or sit, except to say that she "hurts off and on." (Id. at 255). Dr. Jackson opined that Plaintiff's examination was "essentially normal" and that her blood pressure was "well controlled." (Id. at 257). Dr. Jackson further stated that she "d[id] not see any evidence of disease, physical problems, or disability," and that Plaintiff's examination "did not show anything significant."[12] (Id.).

Thus, contrary to Plaintiff's argument, even without a formal RFC assessment by a treating or examining medical source, Plaintiff's treatment records, as well as her activities of daily living (which include shopping, looking for jobs, riding the bus, cooking, doing housework and laundry, going to church, sweeping the front walk, going to appointments paying bills, going to lunch, visiting friends, going to the movies, driving, and sometimes walking) and Dr. Jackson's consultative report, support the ALJ's RFC determination that Plaintiff can perform a

---

[12] In addition, as previously noted, State Agency physician, Dr. Gregory K. Parker, reviewed Plaintiff's medical records and determined that her hypertension, back pain, and swelling, numbness, and nerve problems in her hands and feet were not severe. (Tr. 258).

range of light work.

Therefore, Plaintiff's claim that the ALJ's RFC assessment is not supported by substantial evidence is without merit.

### V. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff's claim for a period of disability, disability insurance benefits, and supplemental security income be **AFFIRMED.**

**ORDERED** this **28th** day of **March, 2014.**

                                          /s/  SONJA F. BIVINS
                                          **UNITED STATES MAGISTRATE JUDGE**